Brady, J.
The object of this action is a construction of the will of Jacob Vanderpoel, who died on the 8th of February 1884, seized and possessed of real and personal property situate in this state. He left him surviving the four children named in the third paragraph of his will, and his granddaughter, provided for in the second paragraph. Of the children, the plaintiff George B. Vanderpoel, is married and has one child, aged nine. Mary Elizabeth Vanderpoel, one of the daughters, is a widow, forty-five years of age and has no issue. Julia Vanderpoel, the other daughter, intermarried with Frederick W. Loew, and, as the issue of such marriage, there are now living two children thirteen and fifteen years of age, respectively. The son Waldron B. Vanderpoel, is thirty years of age and unmarried; Mary Elizabeth Vanderpoel, the grandchild, is seventeen years of age and is also unmarried.
His last will and testament which bears date the ninth day of February, 1882, and which was duly admitted to probate on the_26th of February, 1884, is still contested by some of the heirs although declared to be a valid instrument by the learned judge at the special term. The testator by the first clause of the will directs the payment of his debts and the erection of a monument and then gives and devises all the rest residue and remainder of his estate to his executors in trust for certain purposes namely to set apart $20,000, invest the same in good securities and to collect the income and apply the same in their discretion to the education and support of his granddaughter Mary Elizabeth Vanderpoel, daughter of his son Benjamin W. Vanderpoel, during her minority and thereafter to pay over to her the income absolutely during her natural life free from the *306 interference or control of any husband she may have. To invest the rest of his property and pay over one-fourth part of the income thereof to his daughter Mary Elizabeth Vanderpoel and one-fourth part thereof to each of his three other children named, such payments to be made at times to be agreed upon by his executors and his children. The will then provides as follows:
Fourth. Whenever any one of my said children shall depart this life leaving lawful issue, him or her surviving, then my said executors shall set apart one undivided one-fourth part of all the rest, residue and remainder of my estate so invested for the benefit of my children as above mentioned, or in case my said grandchild shall depart this life leaving lawful issue her surviving, then they shall take the said sum of $20,000 so set apart for her benefit, as above set forth, and shall invest the same in the way and manner above mentioned, for the use and benefit of the issues of such deceased child or grandchild, and shall use and employ the rents, issues, proi.ts and income thereof, for its or their maintenance and education, or in case it or they shall be of a sufficient age to justify the same, then to pay over such rents, issues and profits to it or them, until it or they shall respectively arrive at the age of thirty years, when the whole of the principal so set apart as above mentioned, or such part thereof as they may be respectively entitled to (if the issue shall consist of more than one) shall be paid over to it or them. To have and to hold the same to it or them, to its or their sole use, benefit or behoof forever. •
In the event that any one of my said children or my said grandchild shall die without leaving any lawful issue him or her surviving, then the income and profits of my estate to which he or she would have been entitled if living, shall be divided between my surviving children above mentioned and the lawful issue of my deceased child, share and share alike, such issue to take the share to which the parent, if living, would have been entitled, and the principal shall form a part of the common fund to be divided among the lawful issue of my said children whenever such issue shall arrive at the age of thirty years, as above mentioned.
It is urged that these trusts are void as in contravention of the statute relating to perpetuities, suspending, as they are claimed to do, the power of alienation for more than two lives in being. The proposition is that the scheme of the testator was to keep the estate in solido, in the hands of the executors, investing and collecting the income as a whole and paying it out in specific proportions during the lives of the four children named and one grandchild, until as to one or more portions the death of a child leaving issue and the attainment of the age of thirty years by one or more of such grandchildren, and as to the remainder the attainment of that age successively by the surviving grandchildren, issue of the testator’s children successively dying. The appellants feel the necessity of maintaining this proposition in order to drag the trusts into the destroying arms of the statute invoked against them. This view is not to be sustained If there has been any period when, in the interpretation of wills, the intention of the testator could not as a rule be rescued from obscurity and doubt and carried out by proper construction, it has passed away forever.
*307 The intention is now the guiding star, and if upon the examination of a will its appears clearly, but its plain and definite purpose is endangered by inapt or inaccurate modes of expression, it is the duty of the court to subordinate the language to the intention, and it may reject words and limitations, or supply or transpose them to determine the correct meaning. Phillips v. Davies, 92 N. Y., 199; Shepard v. Gassner; 41 Hun, 326. And any other rule would, as suggested in the last case cited, frustrate the disposition of his property designed by the testator, and which, if lawful, should be made as directed by him. Here it is evident that he intended the property entrusted should be held in separate shares, and that as to each he meant to create a separate and distinct share. It will have been perceived that he directs the payment of the one-fourth part of the income to each of his children during their respective lives, and he repeats as to each child the payment; for example, one-fourth part to Mary Elizabeth; one-fourth part to my daughter, Julia Vanderpoel Loew, and so as to the others. And, in continuance of this thought, it appears from the fourth paragraph that he provided in the event of any child or grandchild dying without leaving any lawful issue him or her surviving, then the income and profits to which he or she would be entitled if living, should be devided between the surviving children and the lawful issue of any deceased child, share and share alike, such issue to take the share to which the parent, if living would have been entitled, and the principal, it is declared, shall be a part of the common fund to be divided, etc. This reference to the principal is and can be to no other than the share which had previously been given to be held in trust, and, as was said in the Matter of Verplanck, (91 N. Y., 444), although the whole sum is given solido to the executors, and they are required to invest the whole sum, yet each legatee is interested only in his share, and became a tenant as to his interest therein and took distributively and not jointly.
Here, as suggested, the interests are carved out of a single trust, it is true, but are entirely distinct. Whenever the share of any beneficiary vests according to the will and becomes payable, it is the duty of the trustees to pay it over accordingly and the trust as to that share ceases at once. Savage v. Burnham, 17 N. Y., 561, 571; see, also, Harrison v. Harrison, 36 id., 543-548; Mason v. Jones, 2 Barb., 229, 242; S. C., 3 id., 375. In the last case cited it was said that even if the will were capable of receiving a different interpretation for the want of words of severance in the immediate devising clause, yet when the whole will was looked at, it was not perceived that any violence was done to its general import by adopting a *308 different meaning. And this principle was reiterated in the case of Phillips v. Davis, supra, in which it was said as we have seen, that it was the duty of the court in following the guiding star, intention, to reject words and limitations and to supply or transpose them to ascertain the testator’s meaning; and it was further said in that case that the court was bound -by the familiar principle prevailing at law and in equity that a will which admits of a twofold construction, one of which defeats and the other upholds it, that which sustains should be adopted. See, also, on this subject, Post v. Hover, 33 N. Y., 593, 601; Matter of Verplank, 91 id., 443; Du Bois v. Ray, 35 id. 163.
The trust considered therefore, being in shares, there was as to each a suspension of the power of alienation during one life only, namely the owner of each share. The provisions as to the grandchildren are also objected to as within the grasp of the statute. The intention of the testator was to control the use and enjoyment of the shares given by him, and thus to keep them intact until each grandchild who might arrive in the due course of nature attained the age of thirty years. He did not mean that the share should not vest, but that the distribution or payment of each proportionate part thereof to the different owners if more than one, should not be made until each arrived- at the age of thirty years, a period in the life of each which he thought must necessarily pass before the object of his bounty would have the experience or ability or both, to handle the principal. He gave the shares in severalty to the persons named or described, but restricted for a limited period the absolute unconditional use of them. “You may each enjoy,” he said in effect, “the income, but you cannot control or dispose of the estate until you reach the age of which I think you should have that power.”
Under these provisions the issue would each take an unassailable vested interest in the parents’ share limited to the enjoyment of the income until he or she reached the age of thirty. Manice v. Manice, 43 N. Y., 369, 370; Warner v. Durant, 76 id., 133, 136; Stevenson v. Lesley, 70 id., 512, 516; Tucker v. Bishop, 16 id., 402, 405; Bushnell v. Carpenter, 92 id., 270; Pearson v. Dolman, L. R., 3 Eq., 320; Fox, v. Fox, L. R., 19 Eq., 286.
The executors when any child dies leaving issue him or her surviving, are to set apart the one-fourth belonging to the parent. During the life of the child the remainder is contingent, depending first, upon the birth of issue, and secondly upon the death of the parent before that of the issue, but this contingency would happen and be determined within one life, namely that of the parent, being one of the testator’s four children. It is not a valid objection that the *309 limitation was in favor of persons not in esse. Gilman v. Reddington, 24 N. Y., 13, 14; Harrison v. Harrison, 36 id., 543, 545; Savage v. Burnham, 17 id., 561, 571, 572.
The result of the examination of the material questions presented by this appeal is thus expressed. The principles defining the duty of the court in such an essay, as declared by the court of appeals in Phillips v. Davis (supra), have been invoked and have proved important factors, essential perhaps, to the full development of the testator’s intention, which was not made as clearly manifest as it should have been by the terms of the will. It is fortunate that these allies may be resorted to for the reason that there may be, and perhaps will always be, serious contentions over wills which attempt to bind an estate, or limit or control its use by ambiguous phrase or infelicitous and cloudy expressions. When, however, we can push aside the doubt in the light of the testator’s intention, and give that prominence over mist, subtlety and ambiguity, we can more certainly effectuate the wishes of the owner and donor of the estate.
We think the judgment should be affirmed, but under the circumstances disclosed by the record, with costs of the various litigants to be paid out of the estate.
Macomber, J., concurs in the result.'